**IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

| | |
|---|---|
| **RONAK PATEL**<br>**1301 Aliceanna Street, Apt. 901**<br>**Baltimore, Maryland 21231**<br><br>***Plaintiff,***<br><br>**v.**<br><br>**ROCKET CENTRAL, LLC**<br>**1050 Woodward Avenue**<br>**Detroit, Michigan 48226**<br><br>***Defendant.*** | **Case No.**<br><br>**Jury Trial Demand** |

**COMPLAINT**

Comes now Plaintiff Ronak Patel ("Plaintiff Ronak Patel," "Plaintiff," or "Mr. Patel"), by and through undersigned counsel, and hereby files this Complaint against Defendant Rocket Central, LLC (hereinafter "Defendant" "Rocket Central" or "Rocket"). Plaintiff has a disability, partial blindness and loss of eyesight which affects a major life activity, and work and seeks relief pursuant to the District of Columbia Human Rights Act, D.C. Code § 2-1401 *et seq.* for claims of discrimination based on disability, hostile work environment, and disparate treatment. Plaintiff seeks damages, including, but not limited to, declaratory, injunctive and other equitable relief, compensatory damages, litigation expenses and reasonable attorneys' fees, based on Defendant's discriminatory, harassing, retaliatory, and otherwise unlawful actions against Plaintiff Patel.

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over the subject matter of this Complaint pursuant to D.C. Code § 11-921

2. Venue is proper in this Court in that the events and omissions giving rise to Plaintiff's claims occurred here in the District of Columbia and Defendant may be found here.

**PARTIES**

3. Plaintiff Ronak Patel is a former Senior Digital Product Manager of Rocket Central who is a resident of the State of Maryland. Plaintiff has a disability, partial blindness and loss of eyesight which affects a major life activity, and work. Plaintiff is considered an employee entitled to protection under the District of Columbia Human Rights Act, D.C. Code § 2-1401 *et seq*.

4. Defendant Rocket Central, LLC is a Detroit-based hub company overseeing the Rocket Family of Companies and an employer within the meaning of the District of Columbia Human Rights Act, D.C. Code § 2-1401 *et seq.*

**FACTS**

5. On September 24, 2021, Mr. Patel was hired to Rocket Central as a Senior Digital Product Manager. Mr. Patel worked remotely, reporting to Joybelle "JB" Coutinho. Plaintiff has a disability, partial blindness and loss of eyesight which affects a major life activity, and work. Mr. Patel discussed his vision impairment with Ms. Coutinho and advised her that he was able to carry out the essential functions of his position with the assistance of the screen magnification software already included with the Apple Software package on company provided equipment. Rocket hired Mr. Patel fully aware of his vision impairment.

6. During the months of September and October 2021, Mr. Patel performed his job and was given glowing verbal reviews by Ms. Coutinho. Mr. Patel met with his supervisor, Ms. Coutinho, remotely two times per week. Mr. Patel also met with his remote colleagues as a team, once per week.

7. In late October 2021, Mr. Patel became acutely aware that smaller text was becoming very difficult to read even with the assistance of the screen magnification software. Mr. Patel advised Ms. Coutinho of the problems associated with his vision impairment and that he planned to see a retina specialist by the name of Richard S. Kaieser, MD, a physician with the Wills Eye Physicians/Mid-Atlantic Retina practice.

8. On October 25, 2021, Mr. Patel had an appointment with Dr. Kaieser at the Mid-Atlantic Retina practice. During this appointment, Dr. Kaieser diagnosed Mr. Patel with 4+ Nuclear sclerosis. Mr. Patel was advised by Dr. Kaieser to seek follow-up care with a cataract surgeon.

9. On November 3, 2021, Mr. Patel saw Douglas Wisner, MD, a cataract surgeon with Wills Eye Physicians. Dr. Wisner agreed with Dr. Kaiser's diagnosis and advised Mr. Patel that prompt surgery was necessary to prevent further damage to Mr. Patel's retina.

10. Mr. Patel immediately communicated all the details about his medical condition to his supervisor Ms. Coutinho. Ms. Coutinho referred Mr. Patel to a team relations representative at Rocket, Suzanne Liedel, to explore his medical leave options.

11. On October 27, 2021, Mr. Patel participated in a Microsoft Teams call with Ms. Liedel who advised Mr. Patel that he had no short- or long-term disability options and his only option was to request an accommodation under the Americans with Disabilities Act (hereinafter the "ADA"). Ms. Liedel forwarded Mr. Patel a confidential Reasonable Accommodation Packet. Ms. Liedel also forwarded to Mr. Patel's treating physician, Douglas Wisner, correspondence titled "Documentation to Determine ADA Eligibility for Ronak Patel."

12. Both Mr. Patel and Dr. Wisner completed and signed Ms. Liedel's documents on November 3, 2021. Mr. Patel returned by email to Ms. Liedel the signed and dated documents she

requested. The documents attached to the packet explicitly and clearly identified Mr. Ronak's disability, requested an immediate leave of absence for surgery and recovery time and explicitly discussed the likely need for future accommodation on behalf of Mr. Patel. Dr. Wisner's documentation stated, "[d]ue to limited vision please give a leave of absence [to Mr. Patel] effective immediately." Additionally, Dr. Wisner advised that effective future accommodations should include: "[i]mproved/enlarged monitors, text to speech, deadline adjustment." After this documentation was submitted to Ms. Liedel by Mr. Patel and Dr. Wisner, Mr. Patel received no further communications from Ms. Liedel or any other Rocket employer representative until December 21, 2021.

13. On November 12, 2021, Mr. Patel communicated with his supervisor about his medical status via text, but Mr. Patel's supervisor did not acknowledge or respond to Mr. Patel's text messages. From November 10, 2021 through November 29, 2021, Mr. Patel sent numerous emails to Ms. Liedel as follow-ups to the ADA packet submission. Mr. Patel sought information about next steps and offered to provide any additional information necessary. Again, Ms. Liedel did not respond to Mr. Patel during this time period nor did any other Rocket representative.

14. On November 30, 2021, Mr. Patel underwent surgery and during the period from December 1, 2021 to December 21, 2021, Mr. Patel continued to communicate with Ms. Liedel by e-mail inquiring about the status of the ADA request and advising her of his post-surgery medical status.

15. By December 4, 2021, it had become apparent that the November 30, 2021 surgery was not successful. Soon after the surgery, Mr. Patel advised Ms. Liedel and his supervisor by phone messsage that there were complications from the first surgery. Mr. Patel experienced complications such as heavy blinking, constant flickering, pain, migraines, chronic dry eye and

loss of vision. Mr. Patel received no response to his communications about the unsuccessful procedure from his supervisor Ms. Coutinho, Ms. Liedel or any other Rocket representative.

16. On December 6, 2021, Mr. Patel's surgeon advised him to come in for an appointment because of the ongoing post operative symptoms. At this appointment, Mr. Patel was advised that the incorrect lens had been used during the earlier procedure. Mr. Patel timely and promptly advised both Ms. Liedel and his supervisor by email that the surgery was not successful. Mr. Patel's supervisor was empathetic, but she gave no instruction to Mr. Patel about the next steps. Mr. Patel received no response or instruction from his supervisor, from Ms. Liedel or any other Rocket representative about the status of his ADA leave request, though he regularly attempted to communicate with both his supervisor and Ms. Liedel via phone and e-mail.

17. On December 21, 2021, Ms. Liedel falsely and improperly claimed in an email, "[a]s of today your time away from work has not been approved, since we have not received the necessary documentation from the physician's office. If you can please reach out to me today, I will be available from 1:30 – 5:00 pm or on Monday 12/27 from 8:00 am to 4:00 p.m. It's important that we hear from you."

18. On December 23, 2021, Ms. Liedel reached out to Mr. Patel by email seeking additional information for the ADA packet that Mr. Patel had provided her on November 8, 2021, over six weeks earlier. This was the first follow-up communication from Ms. Liedel or anyone from Rocket about his earlier submitted ADA packet. This was also the first time Ms. Liedel advised Mr. Patel his leave request had not been approved. Ms. Liedl's email stated, "In order to *formally* approve your time away, we need the following listed below." Ms. Liedel's December 21st communication said Mr. Patel's leave had not been approved yet, but Ms. Liedl's December 23rd email suggested Mr. Patel's leave simply needed to be "formally" approved.

19. On January 3, 2022, Mr. Patel responded to Ms. Liedel with a carbon copy to Kathy Ponto, stating: "Thank you for providing details on the pending information needed. I've sent multiple messages since submitting the paperwork on 11/8 inquiring if anything further was required. I will request this to be written from the physician who performed the surgery. For awareness, the surgery was performed on 11/30/2021. Per my message on 12/9 there have been complications, and my visual acuity has worsened. I am now seeking advice from multiple physicians if a second surgery to correct the error is attainable and viable, with a current hold date of 1/28/22. I also left a voicemail on your phone earlier this morning. I am struggling to read e-mails and messages with the loss of the vision, so I'd greatly appreciate if you could return my call whenever your schedule permits so we can connect by phone." Mr. Patel received no response to his January 3, 2022 email.

20. On January 5, 2022, Mr. Patel sent a second email to Ms. Ponto stating: "Hope you are doing well. I left a voicemail on your line yesterday and I just tried dialing you again. I've requested all the information in the note below to be written by my physician and sent to you as soon as I receive it. Please give me a call when your schedule permits in case any additional items are needed. Thank you." Later that day, Ms. Ponto finally responded by email to Mr. Patel. Ms. Ponto stated: "Morning! My computer died yesterday so I'm having such technical issues. I am in a meeting now and will call you after."

21. On January 10, 2022, Mr. Patel sent an e-mail to Ms. Ponto, with a carbon copy to Dayna Amolsch, providing the information she requested for the ADA packet that Mr. Patel and Dr. Wisner had earlier submitted to Rocket on November 8, 2022. Under section E, page 4 of the ADA packet, Dr. Wisner added an addendum to the initial submitted ADA leave paperwork to reflect events that had occurred after the initial submission. Dr. Wisner's addendum stated "Ronak

had surgery on 11/30/202. I suggested he remain out for two weeks but he is still unable to work because he needs additional surgery to fully correct his vision. Schedule 1/28/2022. Anticipate return to work 3/15/2022." This amended document also included Dr. Wisner's previously stated position on potential effective accommodation options for return to work which included items such as "improved enlarged monitors, text to speech and deadline adjustment."

22. On January 14, 2022, Mr. Patel e-mailed Mr. Boze with a carbon copy to Ms. Ponto and requested a call with Mr. Boze to discuss next steps with regard to his medical status and medical leave of absence. Ms. Boze responded to Mr. Patel by email stating: "Hello Ronak, please continue to work with Kathi on the ADA process which is your only current leave option. As a result, I won't be calling you. Please continue to direct questions and information regarding your leave/ADA request to Kathi who will loop back with me when appropriate. Wish you the best in your continued recovery." Ms. Boze did not request any further information from Mr. Patel. On or about this time Ms. Ponto in a phone call suggested to Mr. Patel that he should just simply resign. When Mr. Patel pressed Ms. Ponto on her statement, she replied that it was merely a suggestion.

23. On February 28, 2022, Mark Yanoschik sent Mr. Patel another standard form Reasonable Accommodation Packet. Mr. Yanoschik also included in the ADA packet the very same standard ADA information requests for Mr. Patel's medical providers to complete. Later that day, Dayna Amolsch also sent Mr. Patel another copy of the very same form ADA packet request with the very same requests to his medical providers.

24. On March 1, 2022, Mr. Patel underwent a second surgery and on March 8, 2022, Mr. Patel submitted another ADA packet to Rocket with the necessary paperwork from his physicians. This paperwork requested a return-to-work date of May 1, 2022. In addition, this documentation from Mr. Patel's physician, Catherine Kerr-Niermann, O.D., provided Rocket with

documentation that identified the duration of Mr. Patel's impairment as "temporary," for a period of two (2) months in duration. Dr. Kerr-Niermann stated, "Right eye surgery on 03/01/22. Expect recovery time of up to 2 months. Return to work 05/01/22 or sooner if comfortable/recovered." Dr. Kerr-Niermann also provided suggestions regarding possible accommodations to improve job performance. She identified these accommodations as "breaks throughout the workday and provide accessibility for visual impairment to maximize job performance."

25. From March 15, 2022 to April 4, 2022, Mr. Patel had appointments with several physicians at the Wilmer Eye Institute who concluded that the second surgery was also unsuccessful. Mr. Patel experienced severe double vision, loss of vision, pain, glares, light sensitivity, etc. Mr. Patel was advised to proceed with a third surgery which would involve removing both lenses and implanting a new lens. During this time, Mr. Patel complied with Ms. Ponto's request to keep her updated on his medical status. Mr. Patel participated in multiple calls with Ms. Ponto even though he was experiencing severe medical symptoms and significant emotional distress due to the previous failed procedures and his ongoing vision problems. During these calls Ms. Ponto did not request further documentation from Mr. Patel, she did not explicitly deny his leave request, she did not discuss alternative leave options, she did not discuss unpaid leave as an option, she did not discuss Mr. Patel's return to work date as documented by his physicians, she did not discuss the proposed return to work accommodations outlined in Mr. Patel's physician provided documentation and she did not discuss any other return to work options or return to work accommodations with Mr. Patel.

26. On April 6, 2022 Mr. Patel underwent a third surgery.

27. On April 8, 2022, Ms. Ponto contacted Mr. Patel to advise him he was being terminated immediately. Mr. Patel received a Severance Agreement, instructing him to read the letter carefully and return it to Ms. Ponto when completed.

28. On October 2, 2022, Mr. Patel filed an Employee Intake Questionnaire with the D.C. Government's Office of Human Rights ("OHR") against Rocket Central alleging disability discrimination, and stated that he teleworked from Washington, D.C., and on February 22, 2023, the OHR dismissed his OHR complaint pursuant to 4 DCMR § 702.1 (c) and has accordingly exhausted his administrative remedies.

**COUNT I**
**Violation of the District of Columbia Human Rights Act**
**D.C. Code § 2-1401 *et seq.***
**Discrimination based on Disability**

29. Plaintiff realleges and incorporates by reference each of the allegations in the paragraphs above as if set forth fully herein.

30. At all pertinent times, Defendant was an employer subject to provisions of and liable for the actions of its employees under the District of Columbia Human Rights Act, D.C. Code § 2-1401 *et seq.*

31. At all pertinent times, Plaintiff was an employee entitled to protection under the District of Columbia Human Rights Act, D.C. Code § 2-1401 *et seq.*

32. The District of Columbia Human Rights Act prohibits discrimination in employment based on an individual's disability. An employer cannot discharge or otherwise discriminate against any individual, with respect to his compensation, terms, conditions, or privileges of employment, including promotion; or to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his status as an employee.

33. In violation of the DCHRA, Defendant knowingly and intentionally discriminated against Plaintiff Patel based on his disability when Defendant ignored his repeated requests for updates on his accommodations, suggested he resign, and wrongfully terminated him on the basis of his disability.

34. As a direct and proximate cause of Defendant's actions, Plaintiff Patel lost wages and benefits, and suffered damage to his professional reputation, emotional distress, embarrassment, anxiety, fatigue, mental distress, humiliation, illness, and damage to his employment and personal reputation.

35. Defendant had no legitimate business reason for any such acts.

36. Plaintiff is informed and believes, and based thereon, alleges that, in addition to the practices enumerated above, Defendant may have engaged in other discriminatory practices.

**COUNT II**
**Violation of the District of Columbia Human Rights Act**
**D.C. Code § 2-1401 *et seq.***
**Hostile Work Environment and Disparate Treatment**

37. Plaintiff realleges and incorporates by reference each of the allegations in the paragraphs above as if set forth fully herein.

38. At all pertinent times, Defendant was an employer subject to provisions of and is liable for the actions of its employees under the District of Columbia Human Rights Act, D.C. Code § 2-1401 *et seq.*

39. At all pertinent times, Plaintiff was an employee entitled to protection under the District of Columbia Human Rights Act, D.C. Code § 2-1401 *et seq.*

40. The District of Columbia Human Rights Act prohibits discrimination in employment based on an individual's disability. An employer cannot discharge or otherwise discriminate against any individual, with respect to his compensation, terms, conditions, or

privileges of employment, including promotion; or to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his status as an employee.

41. In violation of the DCHRA, Defendant knowingly and intentionally subjected Plaintiff to a hostile work environment and disparate treatment when Defendant ignored his repeated requests for updates on his accommodations, suggested he resign, and wrongfully terminated him on the basis of his disability.

42. As a direct and proximate cause of Defendant's actions, Plaintiff Patel lost wages and benefits, and suffered damage to his professional reputation, emotional distress, embarrassment, anxiety, fatigue, mental distress, humiliation, illness, and damage to his employment and personal reputation.

43. Defendant had no legitimate business reason for any such acts.

44. Plaintiff is informed and believes, and based thereon, alleges that, in addition to the practices enumerated above, Defendant may have engaged in other hostile work environment practices.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Patel prays as follows:

A. That the Court issue an Order declaring Defendant's actions to be a violation of the District of Columbia Human Rights Act, D.C. Code § 2-1401 *et seq.* and declaring Plaintiff eligible to receive equitable and other relief;

B. That the Court issue a permanent injunction prohibiting Defendant from engaging in any discriminatory terminations and retaliation;

C. That the Court enter judgment in favor of Plaintiff against Defendant for all equitable monetary damages available under the law, including but not limited to compensatory damages for emotional distress, back pay and front pay in amounts to be determined at trial and all bonuses to which Plaintiff is entitled;

D. That the Court order Defendant to refrain from any retaliation against Plaintiff, or any other person, for participating in or supporting this case in any manner;

E. That the Court order Defendant to pay Plaintiff's reasonable attorneys' fees, expert fees and costs; and

F. That the Court order Defendant to pay pre-judgment and post-judgment interest as provided by law; and

G. Any and all relief that this Court deems just.

**JURY TRIAL DEMAND**

Plaintiff demands a jury trial on all claims against Defendant.

Date: April 7, 2023

Respectfully submitted,

*/s/ David A. Branch*

David A. Branch, Esq.
D.C. Bar No. 438764
Law Office of David A. Branch & Associates, PLLC
1828 L Street N.W., Suite 820
Washington, D.C. 20036
Phone: (202) 785-2805
Fax: (202) 785-0289
Email: davidbranch@dbranchlaw.com